UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW FITZGERALD JENKINS,

|  |  |  |
|---|---|---|
| | Plaintiff, | Civil Action No. 22-10931 |
| v. | | Linda V. Parker<br>United States District Judge |
| COMMISSIONER OF<br>SOCIAL SECURITY, | | David R. Grand<br>United States Magistrate Judge |
| | Defendant. | |

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 13)

*Pro se* plaintiff Matthew Fitzgerald Jenkins ("Jenkins") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 12, 13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.   RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Jenkins is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED**, Jenkins' Motion for Summary

Judgment **(ECF No. 12)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Jenkins was 33 years old at the time of his application date of July 5, 2019, and at 5'10" tall weighed approximately 165 pounds.  (ECF No. 10-5, PageID.453; ECF No. 10-6, PageID.484).  He graduated from high school and earned a bachelor's degree.  (ECF No. 10-2, PageID.307; ECF No. 10-6, PageID.485).  He has worked in several jobs, including as a chauffeur, security guard, and armored truck driver.  (*Id.*, PageID.485, 492).  However, he has not worked since June 2019, because of his medical conditions and "[t]he economy." (ECF No. 10-2, PageID.314-15; ECF No. 10-6, PageID.485).  He now alleges disability primarily as a result of neck, back, shoulder, arm, and leg pain.  (*Id.*, PageID.484, 505).

After Jenkins' applications for DIB and SSI were denied at the initial level on September 23, 2019 (ECF No. 10-4, PageID.389-93, 398-402), he timely requested an administrative hearing, which was held on July 9, 2020, before ALJ Kevin Fallis (ECF No. 10-2, PageID.290-364).  Jenkins, who was not represented by counsel, testified at the hearing, as did vocational expert ("VE") Diane Regan.  (*Id.*).  On June 2, 2021, the ALJ issued a written decision finding that Jenkins is not disabled under the Act.  (*Id.*, PageID.137-48).  On April 20, 2022, the Appeals Council denied review.  (*Id.*, PageID.40-45).  Jenkins filed for judicial review of the final decision on May 2, 2022.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Jenkins' medical record, function and disability reports, and testimony as to his conditions and

resulting limitations.  The Court has also considered the evidence Jenkins attached to his summary judgment motion and reply brief.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Jenkins is not disabled under the Act.  At Step One, the ALJ found that Jenkins has not engaged in substantial gainful activity since June 4, 2019 (the alleged onset date).  (ECF No. 10-2, PageID.140).  At Step Two, the ALJ found that he has the severe impairments of degenerative disc disease of the lumbar spine, arthralgias, gastroesophageal reflux disease ("GERD"), and a hiatal hernia.  (*Id.*).  At Step Three, the ALJ found that Jenkins' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*, PageID.141).

The ALJ then assessed Jenkins' residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; can occasionally stoop, kneel, crouch, crawl, and balance; can frequently reach; must avoid concentrated exposure to vibration, extreme cold, and wetness; and must avoid all use of

4

hazardous moving machinery and all exposure to unprotected heights.  (*Id.*).

At Step Four, the ALJ found that Jenkins is capable of performing his past relevant work as an accounting clerk.  (*Id.*, PageID.146).  In the alternative, at Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Jenkins is capable of performing the jobs of packer (100,000 jobs nationally), sorter (100,000 jobs), and assembler (200,000 jobs).  (*Id.*, PageID.147).  As a result, the ALJ concluded that Jenkins is not disabled under the Act.  (*Id.*, PageID.148).

C.    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'"  *Id*. (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

D.     **Analysis[1]**

1.     *Substantial Evidence Supports the ALJ's RFC Finding*

As set forth above, the ALJ found that Jenkins has the severe impairments of

---

[1] It is difficult to discern from a review of Jenkins' summary judgment motion and reply brief the specific arguments he is making.  Liberally construed, however, Jenkins appears to be challenging the ALJ's RFC determination, as well as the ALJ's evaluation of Jenkins' subjective complaints and the opinion evidence.  Given that Jenkins attached certain documents to his motion and reply brief which were not before the ALJ, the Court also construes Jenkins to be seeking a sentence six remand related to that information.

degenerative disc disease of the lumbar spine, arthralgias, GERD, and a hiatal hernia.[2] (ECF No. 10-2, PageID.140).   After finding that none of these impairments, whether considered alone or in combination, meet or medically equal a listed impairment, the ALJ determined that Jenkins has the RFC to perform a reduced range of light work.   (*Id.*, PageID.141).   For the reasons set forth below, the ALJ's RFC finding is supported by substantial evidence.

a.   *Medical Records*

To begin with, the ALJ explained that the medical records support the RFC assessment.   (*Id.*, PageID.146).   He noted that the earliest medical record available is from Jenkins' consultative examination with Jai Prasad, M.D. on August 28, 2019.   (*Id.*, PageID.142; ECF No. 10-7, PageID.564-66).   At that time, Jenkins reported experiencing low back pain for the past three years, as well as pain in his knees, shoulders, and neck, and cramps in his hands.   (*Id.*, PageID.564).   He reported occasional use of a cane to ensure he did not stumble, but he was able to walk without it.   (*Id.*, PageID.565).   Dr. Prasad specifically noted that the clinical evidence did not support the need for a walking aid.   (*Id.*, PageID.568).   Jenkins had some tenderness and stiffness in his right knee, as well as some

---

[2] The ALJ also found at Step Two that chronic obstructive pulmonary disease, obstructive sleep apnea, degenerative disc disease of the cervical spine, radiculopathy/neuropathy, and alleged vision problems are not medically determinable impairments.   (ECF No. 10-2, PageID.140-41). Because Jenkins does not challenge these findings, any such argument is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).   Moreover, even if the ALJ had erred in finding these impairments non-severe at Step Two, he found that Jenkins has other severe impairments and proceeded to Step Three of the analysis.   The law is clear that, in that situation, "[t]he fact that some of [Jenkins'] impairments were not deemed to be 'severe' at step two is [] legally irrelevant …." *Williams v. Comm'r of Soc. Sec.*, No. 14-13677, 2015 WL 5719676, at *3 (E.D. Mich. Sept. 30, 2015).

7

stiffness and spasms in his neck and low back.  (*Id.*, PageID.566).

As the ALJ noted, Jenkins subsequently established primary care with Mohammed Saad, M.D. at Beaumont Medical Center-Garden City in September 2019.  (*Id.*, PageID.661).  At his first visit to Dr. Saad, Jenkins had decreased range of motion, tenderness, and pain in his back, but x-rays of his lumbar and cervical spine were normal. (*Id.*, PageID.665).  When Jenkins returned on October 1, 2019, he was referred to a physical medicine doctor for evaluation and management of his back and neck pain, as well as to a rheumatologist for his joint pain.  (*Id.*, PageID.572-73).

On October 17, 2019, Jenkins first met with the physical medicine doctor, Dennis Bandemer, D.O.  (*Id.*, PageID.583-84).  While Jenkins presented with a cane, he had a non-antalgic gait without it.  (*Id.*).  He could perform some heel/toe walking and squat without significant pain.  (*Id.*).  On examination, Dr. Bandemer found no neurological deficits or signs of significant joint abnormalities.  (*Id.*).  He referred Jenkins to physical therapy and prescribed a Medrol Dosepak for possible inflammation.  (*Id.*).  Dr. Bandemer stated that he did "not find anything [] that would warrant the need for [Jenkins] to be on permanent disability …."  (*Id.*).

On November 21, 2019, Jenkins returned to see Dr. Bandemer and had some swelling in the fifth digit of his left hand.  (*Id.*, PageID.828-29).  He reported being halfway through physical therapy, which he thought was helping his back and neck pain to some extent.  (*Id.*).  Dr. Bandemer again noted that Jenkins did not have any neurological deficits or musculoskeletal abnormalities on examination and that "his workup so far is normal." (*Id.*).  Dr. Bandemer wrote that he found "nothing that seems to be limiting [Jenkins']

function." (*Id.*).  Dr. Bandemer encouraged Jenkins to continue physical therapy, follow up with rheumatology, and return on an as-needed basis.  (*Id.*, PageID.828-30).

On January 6, 2020, Jenkins saw rheumatologist Inocencio Cuesta, M.D., who described Jenkins as a "poor historian."[3]  (*Id.*, PageID.631).  On examination, he had a slightly diminished range of motion in the cervical spine and prominent proximal interphalangeal (PIP) joint on the fourth and fifth fingers of his left hand, but no wrist swelling.  (*Id.*, PageID.633).  Dr. Cuesta started Jenkins on Celebrex for the PIP joint inflammation and ordered additional testing.  (*Id.*, PageID.634).

Later that month, Jenkins returned to Dr. Bandemer's office after completing physical therapy.  (*Id.*, PageID.1165).  He continued to complain of back and neck pain, but his gait was non-antalgic and there was no reproducible tenderness in his lumbar spine.  (*Id.*, PageID.1166).  Dr. Bandemer did not find any deficits on examination and recommended that Jenkins continue with his daily stretching and exercise routine from physical therapy.  (*Id.*, PageID.1165).

On June 1, 2020, Jenkins had a telephone visit with Dr. Cuesta.  (*Id.*, PageID.1030).  The lab workup previously ordered showed that he was negative for inflammatory arthritis.  (*Id.*).  Jenkins requested a neck brace, but Dr. Cuesta directed him to Dr. Bandemer for this because his prior x-rays were normal.  (*Id.*, PageID.1032).  A week later, Jenkins met with Dr. Bandemer, asking for braces for his ankles, knees, and neck, as well as a referral for a

---

[3] For instance, Jenkins insisted he had had a positive antinuclear antibody (ANA) panel in the past, but Dr. Cuesta noted that all of the lab results available were negative.  (ECF No. 10-7, PageID.631).

motorized scooter.  (*Id.*, PageID.1157).  On examination, Jenkins was able to stand and ambulate; had "full flexion" in his lumbar spine; had full strength and functional range of motion in all four extremities; and had functional mobility in his cervical spine, with only mild discomfort on rotation.  (*Id.*, PageID.1158).  Dr. Bandemer told Jenkins that bracing was neither necessary nor beneficial, and that he did not qualify for a motorized scooter; however, Dr. Bandemer provided Jenkins with a referral slip so that he could talk to the medical equipment company himself.  (*Id.*, PageID.1157).

When Jenkins returned to see Dr. Bandemer on July 1, 2020, Dr. Bandemer again reported that there was no identifiable cause for Jenkins' reported pain.  (*Id.*, PageID.1161).  Jenkins' examination was "completely normal," and he could stand and walk independently, despite bringing a cane with him.  (*Id.*, PageID.1162).  Dr. Bandemer stated that Jenkins did not have "a musculoskeletal diagnosis that would qualify him for complete disability which is what he appears to be searching for." (*Id.*, PageID.1161).  He reiterated that Jenkins did not need any bracing or a motor scooter, stated there was nothing further he could offer Jenkins, and discharged Jenkins from his care.[4]  (*Id.*).

On September 2, 2020, Jenkins saw a neurologist, who indicated that EMG and nerve conduction studies of the right upper and lower extremities showed no evidence of lumbar radiculopathy, generalized peripheral neuropathy, carpal tunnel syndrome, or ulnar nerve entrapment.  (*Id.*, PageID.1379).  A few weeks later, at his annual health maintenance

---

[4] Nevertheless, Jenkins asked a different doctor to provide him with scripts for a wheelchair evaluation and neck brace later that month (despite the fact that at that visit he had normal range of motion, no tenderness or edema, full strength, and only some decreased sensation on the right arm compared to the left).  (ECF No. 10-7, PageID.1297-99).

exam, Jenkins had strong and symmetrical tone and strength in all of his extremities.  (ECF No. 10-8, PageID.1534-39).  He had no joint pain or edema; his back was symmetrical with no curvature; and he had normal range of motion.  (*Id.*, PageID.1537).

At a follow-up rheumatology visit in November 2020, Dr. Cuesta noted that Jenkins' joints in his hands, wrists, and knees looked good, with no active inflammation and full range of motion.  (*Id.*, PageID.1389, 1392).  Based on his continued reports of pain, however, Jenkins was referred for further spine imaging.  (*Id.*, PageID.1392-93).  An MRI of his cervical spine performed that month was unremarkable; the MRI of his lumbar spine showed disc bulging and central annular fissures at L4-L5 and L5-S1, but no evidence of spinal stenosis or neural foraminal narrowing.  (*Id.*, PageID.1489-91).

On November 18, 2020, Jenkins underwent a physical capacity evaluation.  (*Id.*, PageID.1468-73).  Gagandeep Cheema, PT performed testing and reported that Jenkins met the requirements for sedentary work with some postural limitations.  (*Id.*, PageID.1468-69).  However, PT Cheema also explained that Jenkins reported reliable pain ratings only 14.3% of the time and concluded that: "The functional abilities demonstrated in this evaluation do not represent a true and accurate representation of this patient's overall physical capabilities secondary to the unreliable pain reports.  The results of this evaluation represent a minimal level of functioning for this patient."  (*Id.*, PageID.1468).

On January 4, 2021, Jenkins returned to Dr. Saad with decreased range of motion, pain, and tenderness in his lumbar and cervical spine.  (*Id.*, PageID.1530).  Dr. Saad noted that Jenkins had an upcoming appointment with a neurosurgeon for further evaluation of his chronic low back pain and abnormal lumbar MRI.  (*Id.*, PageID.1527).

In summary, then, while Jenkins repeatedly complained of chronic pain during the relevant time period, the objective medical evidence ranges from entirely normal to some unspecified decreased range of motion, pain, and tenderness in his back. Only the MRI of Jenkins' lumbar spine showed any degeneration, and just two months prior to that imaging, he had strong and symmetrical tone and strength in all of his extremities. Moreover, two months after the imaging, Dr. Saad documented only somewhat decreased range of motion, pain, and tenderness – no different from most of Jenkins' earlier examinations. Thus, where the RFC – which, as discussed below, is consistent with record medical opinions – limits Jenkins to light work, with no more than occasional postural activities, it adequately accommodates any documented difficulties with range of motion or tenderness and is supported by substantial evidence.

### b.    *Subjective Complaints*

In his decision, the ALJ found that Jenkins' "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record …." (ECF No. 10-2, PageID.142). Once an ALJ determines that an impairment could reasonably be expected to produce pain or other symptoms, the ALJ must examine the entire record and consider whether there are any inconsistencies in the evidence and the extent of any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(4). Here, the ALJ's findings are supported by substantial evidence in the record.

In this case, the ALJ included limitations in the RFC based in part on Jenkins' complaints of pain in many areas of his body. (ECF No. 10-2, PageID.144). Indeed, the

ALJ specifically acknowledged that Jenkins' reported pain was consistent throughout the treatment records; however, he also noted that the objective medical evidence was mostly normal, as discussed above, and therefore inconsistent with Jenkins' alleged inability to sit, stand, and walk for more than a few minutes at a time. (*Id.*, PageID.142-44).

In evaluating Jenkins' subjective complaints, the ALJ also considered the alleged side effects of his medications, as well as his reported daily activities. For example, the ALJ acknowledged that, at the hearing, Jenkins reported medication side effects, including nausea, dizziness, diarrhea, chest pain, and weight gain. (*Id.*, PageID.142). However, a claimant's allegation of medication side effects must be supported by objective evidence, including reporting those effects to the claimant's physician. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004). Here, there is no mention of alleged medication side effects in any of the treatment notes. The ALJ also discussed the fact that Jenkins' daily activities are relatively normal and include attending to his own personal care, preparing simple meals, and performing basic household chores. (ECF No. 10-2, PageID.142). Jenkins also testified at the hearing that he was renovating his home. (*Id.*, PageID.346-47). Courts have recognized that an ALJ may properly consider these types of activities when evaluating a claimant's subjective complaints of pain. *See, e.g., Wilk v. Comm'r of Soc. Sec.*, No. 16-14308, 2018 WL 1075072, at *7 (E.D. Mich. Feb 8, 2018) (ALJ properly considered daily activities, including housekeeping, laundry, cooking simple meals, and shopping); *Schnarr v. Comm'r of Soc. Sec.*, No. 16-13618, 2017 WL 10351834, at *12 (E.D. Mich. Nov. 28, 2017) (ALJ properly considered claimant's ability to care for personal needs, prepare meals, do laundry, and go grocery shopping).

13

In summary, the ALJ identified substantial record evidence in support of his conclusion that Jenkins' subjective complaints of pain did not warrant greater restrictions than those included in the RFC. Where the Sixth Circuit has held that an ALJ's subjective symptom evaluation shall not be disturbed "absent compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), Jenkins has identified no error warranting remand.

c.      *Medical Opinions and Prior Administrative Medical Findings*

The ALJ also evaluated the medical opinions and prior administrative medical findings in formulating Jenkins' RFC. (ECF No. 10-2, PageID.145-46). The ALJ found the opinion of Reuben Henderson, D.O., the state agency physician, persuasive in part. (*Id.*, PageID.145). Dr. Henderson found that Jenkins is limited to light work, with only occasional climbing of ladders, ropes, and scaffolds, balancing, and stooping; frequent climbing of ramps and stairs, kneeling, crouching, and crawling; limited reaching bilaterally; and no concentrated exposure to extreme cold, wetness, vibration, or hazards. (ECF No. 10-3, PageID.382-84). The ALJ explained that Dr. Henderson's findings were consistent with Jenkins' reported symptoms, as well as the findings of the consultative examiner (Dr. Prasad)[5] and Jenkins' primary care physician (Dr. Saad). (ECF No. 10-2, PageID.145). However, the ALJ also noted that Dr. Henderson's opinion was inconsistent with the findings of various specialists, including Dr. Bandemer, whose findings were essentially normal. (*Id.*). Thus, the ALJ found that Dr. Henderson's limitation to light

---

[5] The ALJ noted that Dr. Prasad made no specific findings regarding Jenkins' limitations. (ECF No. 10-2, PageID.145). However, the ALJ acknowledged Dr. Prasad's notes, which indicate that Jenkins can lift up to 20 pounds and does not require an assistive device for ambulation. (*Id.*). The ALJ found these portions of Dr. Prasad's opinion persuasive.

14

work was consistent with the medical records, but that Jenkins' symptoms "would cause a higher limitation in the ability to change posture"; thus, the ALJ included *more* restrictive postural limitations in the RFC assessment than those assessed by Dr. Henderson.

Additionally, the ALJ considered Dr. Bandemer's opinion that Jenkins has no physical limitations. (*Id.*). In doing so, the ALJ noted that Dr. Bandemer's treatment records support his opinion, as do Dr. Cuesta's notes. (*Id.*). However, the ALJ explained that Dr. Saad's treatment notes are not entirely consistent with Dr. Bandemer's opinion; thus, the ALJ found the opinion unpersuasive and formulated an RFC that is *more* favorable to Jenkins, as it imposes numerous physical limitations.

In sum, the ALJ's RFC finding is supported by substantial evidence, including Jenkins' medical records, his subjective complaints, the medical opinion evidence, and prior administrative medical findings.

## 2.   *A Sentence Six Remand is Not Warranted*

Lastly, Jenkins attached to his summary judgment motion and reply brief certain documents that were not presented to the ALJ, including a July 15, 2022 Function Report, a March 31, 2022 Medical Examination Report signed by Dr. Cuesta, treatment notes from an October 6, 2021 visit to Dr. Cuesta, and a March 31, 2022 Physician's Statement from Dr. Cuesta. (ECF No. 12, PageID.1640-41, 1643-50; ECF No. 14, PageID.1684-97). Although Jenkins makes no specific arguments regarding any of this evidence, the Court will consider whether it warrants remand under sentence six of 42 U.S.C. § 405(g).

Remand to consider additional evidence that was not presented to the ALJ is appropriate only when the evidence is new and material, and good cause is shown as to

why it was not presented at the prior proceeding.  *See* 42 U.S.C. §405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).  Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  Evidence is "material" if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).  "Good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 279 F.3d at 357.

Here, the Function Report and medical evidence from Dr. Cuesta can be considered "new" evidence, as they were generated after the ALJ issued his decision on June 2, 2021. However, even if the Court were to find that Jenkins established "good cause" for his failure to submit these records sooner, he has not shown that any of the evidence in question is material.  In the Social Security context, evidence is considered "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).  Jenkins fails to meaningfully analyze the evidence in question; instead of proffering an argument as to how it is likely to change the ALJ's analysis, he simply attached the evidence to his court filings and said nothing further.  The Court could therefore reasonably find Jenkins to have waived any argument as to the evidence's alleged materiality.  *See McPherson*, 125 F.3d at 995-96.

However, even if the Court were to consider the merits of this issue, Jenkins fails the materiality prong required for a sentence six remand.  For example, in Dr. Cuesta's October 6, 2021 treatment note, although Jenkins was experiencing some neck and back pain and had tingling sensations in his hands and feet, the doctor indicated that overall, Jenkins' undifferentiated inflammatory arthritis was "doing well" and "doing okay" and that he had "no active inflammation."   (ECF No. 14, PageID.1687, 1691, 1695). Importantly, Jenkins was merely instructed to follow up in eight months.   (*Id.*, PageID.1693).  Jenkins also provided (1) a March 31, 2022 "Physician's Statement" from Dr. Cuesta in which the doctor checked a box indicating that Jenkins was incapable of working since October 2019; and (2) an August 11, 2022 "Physician's Certification" from Dr. Cuesta in which he opines that Jenkins is unable to perform any substantial gainful activity.  (*Id.*, PageID.1696-97).  However, neither form provides any specific functional limitations, and the determination of disability is reserved to the Commissioner.  *See* 20 C.F.R. § 404.1520b(c)(3)(i) (statements that you are or are not able to work, or able to perform regular or continuing work, are statements on issues reserved to the Commissioner).  Additionally, some of the records are duplicative of others addressed by the ALJ in his written decision.  For example, much of Jenkins' July 2022 Function Report corresponds to his earlier Function Report, which the ALJ reviewed.  (ECF No. 10-2, PageID.142) (*compare* ECF No. 12, PageID.1643-51 *with* ECF No. 10-6, PageID.504-11). Finally, where the ALJ determined Jenkins' disability status as of June 2, 2021, treatment notes and opinions issued many months later are simply not material to the ALJ's determination.  *See, e.g., Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233

(6th Cir. 1993) (finding that newly-submitted evidence was not material where the evidence pertained to a time outside the period adjudicated by the ALJ).

For all of these reasons, Jenkins has failed to show "a reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. As such, he has not shown that he is entitled to a remand under sentence six.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED**, Jenkins' Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: November 28, 2022          s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                            United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,*

431 F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 28, 2022.

s/Michael E. Lang
MICHAEL E. LANG
Case Manager